# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 16, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000072-WC

RIVER VIEW COAL, LLC                                         APPELLANT

ON APPEAL FROM COURT OF APPEALS
CASE NO. 2015-CA-000821-WC
V.                    WORKERS' COMPENSATION BOARD
NO. 13-WC-92232

ANGELA WHITLOCK;                                            APPELLEES
HON. WILLIAM J. RUDLOFF,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

An Administrative Law Judge (ALJ) found Angela Whitlock to be permanently totally disabled as a result of work-related physical injuries. The Workers' Compensation Board (the Board) and the Court of Appeals affirmed the ALJ's finding of permanent total disability. River View Coal, LLC (River View) argues on appeal to this Court that the ALJ's finding of total disability was not supported by substantial evidence. Whitlock argues that this matter is not final and appealable because the Board vacated the ALJ's award of temporary total disability and medical expense benefits and remanded for additional findings on those issues and for findings on an alleged psychological claim. For the following reasons, we hold that the ALJ's opinion is final and appealable, and we affirm the Court of Appeals.

# I. BACKGROUND.

Whitlock completed the 8th grade, earned her GED, and received certification as an early childhood education instructional aide. She has worked as an instructional aide with Head Start and in several Kentucky county school systems and as an underground coal miner for River View.

While employed at River View, Whitlock suffered injuries to her left leg (February 3, 2012); to her nose (May 9, 2012 and December 18, 2012); to her right hip and leg (May 18, 2012); and to her low back (March 4, 2013). On April 3, 2014, Whitlock filed an Application for Resolution of Injury Claim alleging that she suffered the preceding physical injuries as well as a work-related psychological injury. River View timely filed a Notice of Claim Denial and the parties proceeded to take proof, which we summarize below.

## A. Whitlock's testimony.

Whitlock testified that her jobs as an instructional aide required her to assist teachers with instruction, to lift children, and to clean classrooms. Her job for River View as a "pinner" required her to work underground lifting and maneuvering heavy items while often working in a bent, stooped, or kneeling position.

Whitlock testified that she had not missed any significant amount of work as a result of her 2012 injuries. However, after her March 4, 2013 low-back injury, Whitlock missed approximately two months of work, returning to work in a different job category and working until July 11, 2013. After last working for River View, Whitlock collected short-term disability and

2

unemployment benefits. When her short-term disability benefits stopped, Whitlock began working part-time as a cook, waitress, and cashier at her sister's restaurant. According to Whitlock, she had no set schedule but worked approximately 10 to 15 hours per week. In lieu of paying Whitlock any wages, the sister helped pay Whitlock's bills. Whitlock admitted that she continued to receive unemployment benefits while working at the restaurant and that she had not reported this work activity to the Unemployment Compensation Commission.

In terms of her physical condition, Whitlock testified that she had continuous low-back pain with radiation of pain into both legs and occasional bilateral leg numbness/tingling.[1] According to Whitlock, her low back and lower extremity symptoms disrupt her sleep and increase with activity, which makes it difficult for her to maintain her house and yard. Based on her physical limitations, Whitlock does not believe that she could return to work as a coal miner or to any of her other pre-injury jobs. She also testified that she could not perform restaurant work on any regular or sustained basis.

**B.     Medical proof.**

Whitlock filed medical records from her treating physicians – Drs. Wallace, Canlas, and Oropilla – and an independent medical evaluation report

---

[1] We note that Whitlock also complained of right shoulder and arm pain. However, she did not allege a specific injury to her shoulder or arm and the ALJ did not base his opinion on Whitlock's shoulder and arm complaints. Therefore, we do not consider those complaints in this opinion.

3

from Dr. Charles Barlow.[2] Dr. Wallace, Whitlock's family physician, treated Whitlock following the back injury, noted improvement in Whitlock's symptoms, and released Whitlock to return to work on April 25, 2013. However, Whitlock continued to complain of back pain, and Dr. Wallace referred her to Dr. Canlas, a physical medicine and rehabilitation specialist, on June 3, 2013. It appears that Dr. Canlas performed a series of trigger point and SI joint injections and, when Whitlock failed to improve, Dr. Canlas referred her to Dr. Oropilla, a pain management physician. Dr. Oropilla performed several steroid injections, which provided only temporary relief of Whitlock's symptoms. None of these physicians specifically addressed whether Whitlock has any permanent impairment rating or permanent restrictions.

Dr. Barlow examined Whitlock on June 11, 2014. Whitlock complained to Dr. Barlow of low-back pain with radiation into both legs, right worse than left. Dr. Barlow's examination revealed full range of motion, no loss of sensation, no reflex deficits, and complaints of pain with straight leg raising. Dr. Barlow reviewed Whitlock's medical records and noted MRI findings of bulging discs at L2-3 and L3-4 with an annular tear and nominal protrusion at L4-5 but no nerve root compression. Based on his examination and review of the medical records, Dr. Barlow made pertinent diagnoses of right hip pain, degenerative lumbar disc disease with a bulging disc, and bilateral radiculopathy. He assigned Whitlock a 6% impairment rating for her low-back

---

[2] Whitlock also filed reports from physicians who treated her for her 2012 injuries. However, because the ALJ did not factor those injuries into his disability award, we do not summarize them herein.

4

injury and stated that she should avoid: bending and twisting at the waist; lifting more than 40 pounds; and pushing/pulling more than 60 pounds. Dr. Barlow did not assign Whitlock any impairment rating or impose any restrictions for her other injuries.

River View filed a letter dated December 10, 2013, from Dr. Canlas, stating that Whitlock did not "meet the criteria for disability" and that she should be able to "pursue some form of part-time or full-time employment." River View also filed the independent medical report of Dr. Thomas Huhn. Whitlock complained to Dr. Huhn of low-back pain with radiation into both legs and occasional leg numbness. Whitlock reported that her symptoms were aggravated by movement and lifting and relieved by use of a TENS unit and heat. Dr. Huhn's examination revealed tenderness to palpation in the low back but normal muscle tone, strength, and sensation in the back and lower extremities. Based on his examination and review of Whitlock's medical records, Dr. Huhn made a diagnosis of bulging lumbar discs with no nerve root impingement, and he assigned Whitlock no impairment rating and imposed no restrictions for any of her other injuries.

We note that River View also filed an independent psychological evaluation report from Dr. Ruth. However, the ALJ did not address Whitlock's psychological claim, and the Board remanded this matter to the ALJ with instructions to do so. Therefore, we do not further address Whitlock's alleged psychological injury.

The ALJ rendered an opinion in which he summarized Whitlock's testimony and records/reports from Drs. Barlow, Canlas, Ruth, and Huhn. Based on his review, the ALJ stated that he found Dr. Barlow to be the most "persuasive and compelling," and that Whitlock has a 6% impairment rating. The ALJ also found Whitlock's testimony regarding her pain, her limitations, and her inability to return to any of her past work to be "credible and convincing." Based on that testimony and Dr. Barlow's report, the ALJ found that Whitlock is permanently totally disabled.

River View filed a petition for reconsideration asking the ALJ to make additional findings, noting that the ALJ had not mentioned evidence favorable to its position. Although the ALJ believed that River View was impermissibly re-arguing the merits in its petition, he issued a second opinion and order. In that opinion and order, the ALJ reiterated much of his original opinion and order and reached the same conclusion.

River View appealed to the Board, which affirmed the ALJ's finding of permanent total disability. However, the Board found that the ALJ's award of medical benefits was not sufficiently specific. The Board also noted that, without any explanation, the ALJ awarded temporary total disability benefits for a period after Whitlock had returned to work for River View. Finally, the Board noted that the ALJ had not addressed Whitlock's psychological injury claim. Therefore, the Board remanded those portions of Whitlock's claim to the ALJ for additional findings of fact and conclusions of law. River View sought

6

review by the Court of Appeals, which affirmed. We set forth additional background information as necessary below.

## II. STANDARD OF REVIEW.

"Whether the Board's opinion is final and appealable is a question of law, and we review questions of law *de novo*." *Hampton v. Flav-O-Rich Dairies*, 489 S.W.3d 230, 232 (Ky. 2016), *reh'g denied* (June 16, 2016). However, as to the substance of the ALJ's opinion, if the party with the burden of proof is successful before the ALJ, the question on appeal is whether that opinion is supported by substantial evidence. *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999). "Substantial evidence has been defined as some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men." *Id.* at 481-82.

## III. ANALYSIS.

### A. Finality.

Whitlock argues, albeit summarily, that the Board's opinion is not final because it vacated and remanded, in part, this matter to the ALJ for additional findings. As we recently held, when the Board fully vacates and remands, the Board's opinion is final and appealable. *Hampton*, 489 S.W.3d at 234. This is so because vacating and remanding either deprives a party of a vested right or authorizes or directs the ALJ to reach a different conclusion. *Id.* We see no difference when the Board only partially vacates and remands. Here, the Board vacated, in part, Whitlock's entitlement to temporary total disability and medical expense benefits, thereby divesting her of her right to those benefits.

7

Furthermore, the board authorized the ALJ to reach a different conclusion regarding Whitlock's entitlement to those benefits. Thus, the Board's opinion was final and appealable.

## B. Finding of permanent total disability.

The ALJ, as fact finder, has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). In drawing those inferences and reaching a decision, the ALJ is free to choose to believe or disbelieve parts of the evidence from the total proof, no matter which party offered it. *Brockway v. Rockwell International*, 907 S.W.2d 166, 169 (Ky. App. 1995). While "a party may note evidence which would have supported a conclusion contrary to the ALJ's decision, such evidence is not an adequate basis for reversal on appeal." *Ira A. Watson Dept. Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky. 2000). Thus, a party seeking to reverse an ALJ's finding in favor of an injured employee must establish that the decision was "so unreasonable under the evidence that it must be viewed as erroneous as a matter of law." *Id.* We analyze River View's argument that the ALJ's finding of permanent total disability is not supported by substantial evidence with the preceding standards in mind.

KRS 342.0011(11)(c) defines permanent total disability as "the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury . . . ." Work is defined as "providing services to another in return

8

for remuneration on a regular and sustained basis in a competitive economy." KRS 342.0011(34). To determine if an employee meets the preceding criteria, an ALJ must make

> an individualized determination of what the worker is and is not able to do after recovering from the work injury . . . . [That determination] necessarily includes a consideration of factors such as the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact. It also includes a consideration of the likelihood that the particular worker would be able to find work consistently under normal employment conditions. A worker's ability to do so is affected by factors such as whether the individual will be able to work dependably and whether the worker's physical restrictions will interfere with vocational capabilities.

*Hamilton*, 34 S.W.3d at 51. In assessing an employee's ability to perform work, the ALJ "must necessarily consider the [employee's] medical condition" but is not required to rely on the opinions of the medical experts. *Id.* at 52. The ALJ may also consider the employee's testimony which "is competent evidence of [her] physical condition and of [her] ability to perform various activities both before and after being injured." *Id.*

The ALJ found that Whitlock suffered a work-related injury and, relying on Dr. Barlow's opinion, that she has a 6% permanent impairment rating. The ALJ took that impairment rating into consideration along with Whitlock's age, education, work history, the restrictions imposed by Dr. Barlow, and Whitlock's self-imposed restrictions and concluded that she is unable to perform any work on a sustained basis. That is all he was required to do and, although we might have reached a different conclusion, we cannot say that the ALJ's conclusion was erroneous as a matter of law.

9

Although the preceding disposes of this appeal, for the sake of completeness, we next address each of River View's specific arguments. First, River View argues that Whitlock's employment at her sister's restaurant indicates that she was able to perform work as defined by the statute and negates any entitlement to a total disability award. If Whitlock had been performing that work on a regular and sustained basis, River View would have a point. However, Whitlock testified that: she had no regular schedule and only worked when she needed help paying a bill or when her sister needed help; she could leave work whenever she felt the need; she only worked a few hours on the days she worked; and she could not perform that work on a full-time or regular basis. The ALJ, as he was entitled to do, believed Whitlock and found that she could not perform any work, as defined by the statute, which included the restaurant job. Furthermore, we note that "a worker is not required to be homebound in order to be found to be totally occupationally disabled." *Id.* at 51. Thus, the fact that Whitlock may have performed less than regular work at her sister's restaurant in exchange for help paying her bills does not, as a matter of law, negate Whitlock's entitlement to a permanent total disability award.

Second, River View argues that the ALJ erred as a matter of law because Whitlock was 40 years of age at the time of the low-back injury and has certification as an instructional aide, which would enable her to perform work as defined by the Act. Certainly, the ALJ could have taken those factors into consideration and come to that conclusion. However, he was not compelled to

10

do so. We note that the totally disabled claimant in *Hamilton* was 39 years of age and had a high school education, *Id.* at 50, as was the totally disabled claimant in *McNutt Construction/First General Services v. Scott*, 40 S.W.3d 854, 856 (Ky. 2001). Thus, while age and education are significant factors that an ALJ must consider they are not dispositive, and this argument is not persuasive.

Third, River View argues that Whitlock's "medical restrictions" do not prevent her from performing her past work. As the ALJ noted, Dr. Barlow restricted Whitlock from bending and twisting, lifting more than 40 pounds, and pushing/pulling more than 60 pounds. Whitlock testified that her job as a coal miner required her to lift heavy items and to work at times in a bent, stooped, or kneeling position. Dr. Barlow's restrictions would have prevented her from performing this type of work. As to her work as an instructional aide, Whitlock testified that she assisted classroom teachers, which required her to lift children and clean classrooms. Dr. Barlow's restrictions against bending, twisting, and lifting more than 40 pounds would preclude this type of work. Arguably, Dr. Barlow's restrictions might not have precluded Whitlock from performing restaurant work; however, as noted above, the ALJ was not required to rely solely on the medical restrictions. He was permitted to rely on Whitlock's testimony, which he did. Thus, this argument is not persuasive.

Fourth, River View argues that the ALJ's opinion is erroneous because even Whitlock did not believe she was totally disabled. As evidence of this, River View notes Whitlock's testimony that she had applied for a number of

jobs, some of which arguably would require exertion beyond her restrictions. This argument ignores three important facts. First, it is the ALJ's belief regarding the extent of disability that controls, not the claimant's. Second, although she admitted applying for those jobs, Whitlock testified that she did not believe she could actually perform them. Third, Whitlock admitted that she had neither the training nor experience to perform several of the jobs for which she applied. Thus, this argument is not persuasive.

Finally, River View argues that the Court of Appeals ignored the "fact" that Whitlock left her job in July 2013 and did not return because of alleged sexual harassment, not because of her injury. As River View notes, there is evidence in the record that Whitlock had been sexually harassed during the time between her back injury and her last day of work. Furthermore, there is evidence in the record that Whitlock suffered depression and anxiety because of the alleged sexual harassment, and she admitted the sexual harassment was part of the reason she did want to continue working at River View. However, Whitlock also testified that the primary reason she did not continue working at River View was because "I hurt every day . . . . My whole life has changed. I go to bed at night in pain. I sleep on a heating pad and a stupid, big, old wedge pillow and everything else. I don't ever sleep comfortable." The ALJ could have chosen to believe that Whitlock left work at River View and did not return because of the sexual harassment; however, he would have had to ignore Whitlock's primary reason for doing so to make the choice. As noted above, an ALJ is free to pick and choose what evidence to believe and nothing would have

compelled him to pick Whitlock's secondary reason for leaving and not returning rather than her primary one. Thus, the Court of Appeals did not err by failing to recognize that the record contained evidence that Whitlock stopped working at River View and did not return to work there for non-injury-related reasons.

## IV. CONCLUSION.

For the foregoing reasons, we affirm the Court of Appeals.

All sitting. Minton, C.J., Cunningham, Hughes, Keller, Venters and Wright, JJ., concur. VanMeter, J., dissents without opinion.


COUNSEL FOR APPELLANT:

Brandy Hassman

COUNSEL FOR APPELLEE:

Lucius P. Hawes, Jr.

13